UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.                                               Case No. 3:07-cv-273-J16-MCR

**JAMES LOUIS GUYTON, JR., as
EXECUTOR OF THE ESTATE OF
JAMES LOUIS GUYTON,**

    **Defendant.**
_____/

## ORDER

Plaintiff, the United States of America (the "Government") filed this civil suit pursuant to 26 U.S.C. § 7402, seeking judgment against James Louis Guyton, Jr. (the "Defendant") in his capacity as Executor for the estate of his father, James Louis Guyton (the "Decedent"), for allegedly unpaid federal income tax liabilities.

Before the Court are the parties' Motions for Summary Judgment (Dkts. 13, 14, collectively the "Motions") and the Government's Response in Opposition to Summary Judgment (the "Response," Dkt. 15). Defendant, who is proceeding *Pro Se*, appears to have incorporated his Response in Opposition within his Motion for Summary Judgment (Dkt. 14).[1] For the reasons that follow, the Government's Motion for Summary Judgment (Dkt. 13) will be **GRANTED** and Defendant's Motion for Summary Judgment will be **DENIED** (Dkt. 14).

---

[1] It is unclear from Defendant's Motion for Summary Judgment whether it is meant to be a separate Motion for Summary Judgement or a Response in Opposition to the Government's Motion for Summary Judgment. The Court will treat it as both a separate Motion for Summary Judgment and a Response in Opposition.

**I.     Brief Factual Background**[2]

On January 20, 2000, Decedent sold his poultry farm operation in McAlpin, Florida known as Guyton Farms for $190,000. This sale resulted in a reportable gain of $160,301. Decedent used a portion of the gain to pay off two mortgages, and then deposited $99,735.58 into a joint farm checking account. On June 17, 2000, Decedent died. At the time of Decedent's death, the money from the sale of the poultry farm remained in the joint farm checking account. On August 1, 2000, Defendant was appointed Executor of Decedent's estate (the "Estate").[3] Under the terms of Decedent's will, Defendant's brother, Timothy Guyton, acquired the right to receive the income from the joint farm checking account as a joint tenant with rights of survivorship. See Dkt. 14, pp. 2-3.

On September 21, 2001, Defendant filed Decedent's 1040 individual tax return for the year 2000, reflecting an outstanding tax liability of $132,436. On October 11, 2001, and November 30, 2001, Defendant paid $66,496.75 and $43,503.25 respectively toward Decedent's outstanding tax liability. On March 14, 2004, Defendant paid an additional $3,182.22. These payments totaled $113,182.22 . On May 10, 2005, the Internal Revenue Service (the "Service") mailed a "Notice of Deficiency" to Defendant informing him that the Estate still owed $39,991.76 on Decedent's outstanding tax liability for the year 2000 (this includes an assessed balance of $29,033.86, accrued interest of $6,436.74 and a late payment penalty of $4,521.16. As of February 17, 2009, the

---

[2] The Court will not regurgitate the pertinent parts of the Internal Revenue Code in this Order. The parties have listed them in multiple documents and enough paper has been wasted already.

[3] Decedent's probate proceedings are *In re Estate of James L. Guyton*, Docket. No. 00-148-CP (Cir. Ct. for Suzanne County, Probate Div.). (sp - should be Suwanne County)

Government claims that there remains due and owing $50,453.63 (the "Tax Liability"), plus interests and all statutory additions thereafter, as provided by law.

On February 28, 2007, in connection with Defendant's probate proceedings, the Service, acting on behalf of the Government, filed a Statement of Claim (the "Statement") for the Tax Liability. On March 7, 2007, Defendant filed an objection to the Statement (the "Objection"). Upon receipt of the Objection, and in accordance with Florida Statute §733.705(5), the Government filed this suit.

Before filing this suit, Defendant filed a petition in the Tax Court on September 27, 2006, in his capacity as Executor challenging the Service's Notice of Determination dated September 13, 2006, because he was not allowed to participate in the collection due process hearing. See Estate of James Louis Guyton v. Commn'r of Int. Rev., Docket No. 20120-06L (U.S. Tax Ct.). As the proceedings in Tax Court progressed, the Government filed a Motion to Stay Proceedings in this case on June 27, 2007, which the Court granted on July 20, 2007. See Dkt. 9.

On November 15, 2007, the Tax Court granted the Government's Motion for Summary Judgment filed on October 2, 2007, finding that the issues related to the Tax Liability should be decided by the district court in connection with this action. In that same order, the Tax Court also found that Defendant had "won" his case because the Service was not going to collect the outstanding liability via levy and instead would proceed by filing a claim in probate court and this action in district court.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In determining whether to grant summary judgment, the Court must view the evidence and inferences drawn from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir.1988); WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir.1988). The Eleventh Circuit explained in WSB-TV v. Lee that:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference can be reasonably drawn, it is for the trier of fact to determine the proper one.

Id.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works, Inc., 835 F.2d at 856.

## III. Discussion

Defendant claims that the undisputed facts demonstrate that he did not receive the taxable income from the sale of Decedent's farm, thus, Defendant cannot lawfully be held liable for the Tax Liability on that portion of Decedent's income. Defendant claims that his brother, Timothy Guyton, received that portion of Decedent's income that remained in the joint account and thus, that income never "flowed through" the Estate. Defendant claims that the record makes clear that his brother received the gain from the sale of Decedent's farm and thus, it is his brother who should be liable

4

for the taxes on that income. Defendant asks the Court to enter judgment in his favor in the amount of $40,218.22 in overpayment of taxes, plus interest, costs, fees and all statutory additions allowed by law.

Defendant also raises two "threshold" issues - one procedural and one substantive. Procedurally, Defendant claims that this action was not filed in accordance with Florida Statute §733.705(5) and is untimely under §733.705(8). Substantively, Defendant claims that this Court lacks jurisdiction because the Government is barred under Internal Revenue Code § 6213 from filing suit in this Court while Defendant had a suit pending before the Tax Court.

The Government claims that the undisputed facts demonstrate that Decedent incurred the Tax Liability for the 2000 tax year, and that judgment should be entered against the Defendant, as the Decedent's Executor, for the Tax Liability, which was $50,453.63, as of February 17, 2009. The Government claims that while Defendant may ultimately be able to pursue a claim on behalf of the Estate against his brother, the Service does not recognize this "defense" and is entitled to the Tax Liability because the income from the sale of the poultry farm was clearly earned by Decedent before his death.

The Government further claims that Defendant's remaining arguments have no merit. The Government claims that because Decedent remains liable for the Tax Liability, the Court should reject Defendant's argument that he is entitled to a refund of an overpayment. The Government further claims that even if Defendant overpaid Decedent's taxes, such a claim should be dismissed for Defendant's failure to satisfy the requirements of 26 U.S.C. § 7422. Specifically, the Government claims that Defendant did not file a claim for refund, such as an amended tax return, and did not pay the entire amount of the tax liability owed.

Finally, the Government claims that Defendant's two "threshold" arguments lack merit. The Government rejects Defendant's claim that this action is "time barred" because of the Government's alleged failure to file its claim in accordance with time limits established by Florida Statute §733.705. The Government informs the Court that its claim was timely filed and also notes that state statutes of limitations do not apply to claims brought by the United States. The Government also rejects Defendant's claim that the filing of this case violates 26 U.S.C. § 6313 because the Government challenged a Notice of Levy, not a Notice of Deficiency.

The Government also raises a procedural challenge. Specifically, it claims that the Court should strike Defendant's Motion for Summary Judgment (Dkt. 13) as untimely. The Government claims that Defendant failed to comply with the Court's March 10, 2008, Order (Dkt. 11). In that Order, the Court lifted the stay of this litigation (following the Tax Court's final decision and the expiration of the appeal period) and set February 17, 2009, as the due date for all dispositive motions. The Government notes that Defendant failed to move for an extension of this clear deadline and filed his Motion for Summary Judgment (Dkt. 14) on March 6, 2009. The Government further claims that even of the Court were inclined to view Defendant's Motion for Summary Judgment (Dkt. 14) as a response in opposition to the Government's Motion for Summary Judgment (Dkt. 13), it would also be untimely under Local Rule 3.01 because it was filed four days after the deadline of March 6, 2009. In addition, the Government notes that Defendant's Motion for Summary Judgment (Dkt. 14) exceeds the twenty-page limit for responses.

**Procedural Arguments**

The Court first addresses the parties' procedural arguments. While it is true that Defendant's Motion for Summary Judgment (Dkt. 11) is untimely in whatever form Defendant meant to file it -

6

separate motion or response, it shall not be stricken. Defendant is proceeding *pro se* and thus, will be given some procedural latitude by the Court.

Defendant's procedural argument that the Government's filing was untimely under Florida Statute §§ 733.705(5) and (8) is unavailing. The Government is correct that its filings (albeit at times completed in the wrong venue) are timely because neither sections bars the United States' cause of action. First, Florida Statute § 733.705(5) requires the Government to file an independent action within 30 (thirty) days from the date of service of the Objection - here, the Objection was filed on March 7, 2007. The Government filed this independent action before the Court on April 4, 2007, which is well within the time allowed under Florida Statute § 733.705(5).

Turning to Defendant's final threshold argument, case law makes clear that the Government's claim is not subject to state statutes of limitation, including Florida Statute §733.705(8), absent its own consent. See e.g., United States v. Summerlin, 310 U.S. 414 (1940); see also United States v. Kellum, 523 F.2d 1284, 1286 (5th Cir. 1975). Thus, Defendant's final argument has no merit.

**Substantive Arguments**

The parties do not dispute the pertinent facts of this case. The parties dispute the application of those facts to the law. Examination of the parties' arguments for and against summary judgment makes clear that Defendant, proceeding *pro se*, has applied the pertinent facts to the wrong law or relied on legal arguments that are irrelevant.

The Court first addresses Defendant's threshold argument that the filing of this case violates 26 U.S.C. § 6213. Section 6213 prohibits the assessment of a deficiency prior to the expiration of a certain period of time (either 90 or 150 days) or until a decision by the United States Tax Court

7

has become final. See Dkt. 14 for the specific language of the Section. Here, the Service did not issue a notice of deficiency prior to assessing the outstanding liability reported on the Decedent's 2000 tax return because such is not warranted under this factual situation. A notice of deficiency is only warranted in situations in which there is an actual deficiency, that is, where the amount of tax imposed by the Service exceeds the amount of tax shown by the tax payer on his return. Here, the Decedent failed to pay the amount of tax shown on the returns. Because the Service assessed a self-reported deficiency, Section 6213(a) did not apply. Instead, only the Services' collection vehicle, the Notice of Levy - was at issue in the Tax Court case and, not the Decedent's ultimate tax liability. In granting summary judgment for the Service, the Tax Court made clear that it was proper for the Government to file the action pending before this Court (Dkt. 13, Gov. Ex. 1).[4]

Defendant's primary argument against payment of the Tax Liability is that his brother, Timothy Guyton, received that portion of Decedent's income that remained in the joint account and thus, that income never "flowed through" the Estate and is not subject to taxation. Defendant claims that the record makes clear that his brother received the gain from the sale of Decedent's farm and thus, it is his brother who should be liable for the taxes on that income.

This argument is irrelevant under the undisputed facts presented in this case. Whether or not the proceeds flowed through the estate, Decedent incurred a tax liability prior to his death. The Internal Revenue Code imposes a tax on the "taxable income" of individuals and trusts. See 26 U.S.C. § 1(a). Section 61(a) provides that "gross income means all income from whatever source

---

[4] Defendant insists that he "won" his Tax Court case. This is not true, the Tax Court granted the Service's Motion for Summary Judgment. (Dkt. 13, Gov. Ex. 1). The Tax Court determined that the defendant "won" in the sense that the Service was not going to collect the outstanding Tax Liability via levy and instead must pursue a claim in probate court and then in an action in district court.

derived" and all gains are taxed unless specifically excluded. The sale of the poultry farm resulted in reportable income that is subject to taxation.

Defendant attempts to claim that the Government can collect the Decedent's tax liability from Defendant's brother, Timothy Guyton. Defendant claims that the proceeds from the poultry farm sale were income to his brother under Section 691 as "income in respect to a decedent"and not to the Decedent. Section 691 is inapplicable here because it is not applicable to those items of a decedent's gross income that are includible in the final income tax return. Section 691(a)(1) expressly excludes from its reach "items of gross income in respect of a decedent . . . includible in respect of the taxable period in which falls the date of his death." Decedent sold his farm in January 2000 and received the proceeds before his death later that same year. Section 691 is only applicable to those situations in which a decedent had not yet received the relevant proceeds <u>and</u> the person to whom those proceeds will ultimately flow acquires an interest in them by virtue of the decedent's death. See <u>Coleman v. C.I.R., T.C. Memo. 2004-126</u>, 2004 WL 1153705 (2004).

Defendant informs the Court about the existence of an agreement between all of his siblings (including, of course, his brother, Timothy Guyton) as to the payment of taxes and provides evidence of correspondence from his brother, Timothy Guyton, respecting the same. This agreement and related correspondence, however, are of no consequence. The Internal Revenue Code does not recognize such agreements, especially when it is not a party to them.

Defendant's reliance upon other sections of the Internal Revenue Code, specifically 26 U.S.C. §§ 2031, 2033, 2037, 2040, 2051 and 2056 is also misplaced. The cited provisions relate to the value of the gross estate in computing the estate tax. This case involves Decedent's federal income tax liability for the tax year 2000, not the tax liability of the estate for estate tax.

The undisputed facts make clear that the Decedent incurred income tax liabilities for the tax year 2000, and that he remains indebted to the United States for those liabilities. Having found for the Government, the Court will not address any arguments relating to Defendant's claims about a "refund."

**IV. Conclusion**

For the reasons set forth above, it is **ORDERED** that the Government's Motion for Summary Judgment (Dkt. 13) is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED** (Dkt. 14).

The **CLERK** shall immediately **CLOSE** this case and enter judgment for the Government in the amount of $50,453.63, plus interest.

**DONE** and **ORDERED** in Jacksonville, Florida on this 7th day of May 2009.

JOHN H. MOORE II
United States District Judge

Copies to: Counsel of Record
*Pro Se* Plaintiff